# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

HOMTEX, INC.,          )
                        )
     Plaintiff,        )
                        )
v.                     )     Case No.: 5:19-cv-00009-LCB
                        )
CALAMITY JANE'S FUNK AND   )
JUNK, INC.,          )
                        )
     Defendant.      )

## MEMORANDUM OPINION AND ORDER

Plaintiff originally filed this action in the Circuit Court of Cullman County, Alabama, on November 28, 2018, against the Defendant for breach of a contract along with several other counts. (Doc. no. 1-1). Plaintiff alleges that Defendant ordered substantial textile apparel from their company and has failed to pay according to their agreement. *Id.* The damage alleged by Plaintiff is approximately $171,548.80, plus interest, costs and fees. *Id.* Defendant filed a notice of removal on January 2, 2019, citing diversity jurisdiction.[1] (Doc. no. 1).

The case currently is before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (doc. no. 3). Plaintiff filed their response on January 25, 2019. (Doc. no. 7). Defendant filed a reply on February 1, 2019 (doc. no. 9). The parties presented oral arguments on May 2, 2019. Upon review and for the

---

[1] The case was removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Doc. 1).

reasons stated herein, the Court concludes that Defendant's Motion to Dismiss (doc. no. 3) is due to be denied.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(2), "[a] plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). After the defendant challenges jurisdiction with affidavit evidence in support of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless [the defendant's] affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). *See also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir.2006). However, if "the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier*, 288 F.3d at 1269.

Upon diversity a federal court "may exercise personal jurisdiction over a nonresident defendant to the same extent that [an Alabama] court may, so long as the exercise is consistent with federal due process requirements." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Alabama's long-arm statute, ". . .

permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000) (citing *Martin v. Robbins*, 628 So.2d 614, 617 (Ala. 1993) ). *See* also Ala. R. Civ. P. 4.2 (permitting jurisdiction over nonresident defendants on any basis "not inconsistent with the constitution of this state or the Constitution of the United States"). Therefore, this Court may exercise personal jurisdiction over a defendant so long as jurisdiction is consistent with federal due process under the Fourteenth Amendment to the U.S. Constitution.

The Supreme Court has recognized two types of personal jurisdiction that are consistent with the Due Process Clause of the Fourteenth Amendment, general jurisdiction and specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011). A defendant subject to general jurisdiction in a forum may be sued in that forum on any and all claims against it, even if the claims have no connection to the forum. *Id.* at 919. In contrast, a court has specific jurisdiction over a defendant only with respect to claims that arise out of or relate to the defendant's contacts with the forum. *Id.* at 923-24.

In the case at bar, the Plaintiff concedes that the Defendant is not subject to general personal jurisdiction. (Doc. no. 7, p. 12). Thus, this Court must simply address the question of whether the Defendant is subject to specific jurisdiction in

Alabama for the claims asserted against it in this action.

The Eleventh Circuit follows a three-part test to determine whether specific jurisdiction over a defendant is proper. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). The test as set out in *Mosseri* provides that the Court address the following:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Id.* at 1355 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 474–75 (1985). *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984); and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The burden generally rests upon the Plaintiff to establish the first two prongs, if successful, the burden then shifts to the defendant to avoid jurisdiction by making "a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

## II.  SUMMARY OF FACTS

In support of the motion Defendant submitted an affidavit of its founder and Chief Executive Officer, Jazmine Farmer.  (Doc. no. 3-1).  Plaintiff, in response, provided an affidavit of Maury Lyon, Vice President of Apparel Sales for the

Plaintiff. (Doc. no. 7-1). Based upon the pending motion, response, supporting affidavits, and oral arguments the following facts are undisputed:

1. Defendant is an Oklahoma Corporation with its principal place of business in Oklahoma City, Oklahoma; it has no offices, property, employees or agents in Alabama; it has no registered agent for service of process in Alabama; it has no state bank accounts in Alabama nor does it pay taxes in Alabama. (Doc. no. 3-1).

2. Plaintiff is an Alabama Company with its principal place of business located in Cullman, Alabama. (Doc. no. 1-1).

3. Defendant engaged the Plaintiff to manufacture "custom-made apparel items (including T-shirts, long sleeve shirts, pillow covers, and other similar products) (the 'Spring 2018 Merchandise') with designs specifically made for Defendant and bearing Defendant's trade name 'Calamity Jane's Apparel.'" (Doc. nos. 1-1 ¶ 16, 3-1 ¶ 5 and 7-1).

4. On July 24, 2017 the Defendant submitted the first order for the Fall 2017 Merchandise, a total of 13,041 items for $89,346.35. (Doc. nos. 1-1, 3-1, 7-1 and 7-2, at 1-2).

5. In October 2017 Defendant submitted a second order described by Plaintiff as "large sample order for multiple different styles of shirts." (Doc. nos. 3-1 and 7-1).

6. On November 10, 2017, Defendant submitted a third order for samples for the Spring 2018 order. (Doc. no. 7-2, at 4-5).

7. Defendant submitted a fourth sample order on November 13, 2017. (Doc. no. 7-2, at 6-7).

8. The second purchase order was submitted by Defendant on December 7, 2017, for the Spring 2018 line, 26,130 items for a total of $154,707.50. (Doc. no. 7-2, at 8-10).

9. Thereafter, Defendant submitted several smaller purchase orders one on January 17, 2018 for 504 items and another on January 30,

2018, for 1,200 items for a total of $13,665.00. (Doc. no. 7-2, at 11-12).

10. Each of the orders involved custom made apparel products and the parties had extensive discussions prior to these orders about designs and specifications of the merchandise. (Doc. nos. 3-1 and 7-1).

11. The products were more specialized than usual because the merchandise included Defendant's trademark and logo. (Doc. no. 7-1, and 7-3, at 20).

12. In addition, some of the products are locally specific to the State of Alabama since they contain the words "Alabama." (Doc. no. 7-1, at 9).

13. The parties frequently discussed specific design and manufacturing issues by email, telephone and FaceTime. (Doc. no. 3-1 and 7-1).

14. Due to concessions regarding non-conforming merchandise, Plaintiff waived payment for the initial purchase order, the Fall 2017 merchandise and allowed the Defendant to keep the merchandise. (Doc. no. 7-1, ¶ 13).

15. Around January of 2018, due to alleged problems with the merchandise Defendant refused and/or failed to pay for the Spring 2018 orders. (Doc. no. 7-1).

16. On March 22, 2018, Defendant submitted eight (8) separate purchase orders for 17,493 total items for total of $91,878.20, these orders were terminated by Plaintiff. *Id.*

17. Again on April 12, 2018, Defendant submitted a purchase order for 191 items for $1,135.95, this order was terminated by Plaintiff. *Id.*

18. Defendant's website lists three (3) Alabama stores that sell its merchandise. (Doc. no. 3-1).

19. Defendant has continued to sell items from the Fall 2017 merchandise to customers in Alabama. (Doc. no. 7-1, at 9).

20. Some of the 2017 large sample orders were shipped directly from India to the Defendant in Oklahoma at the direction of the Plaintiff. (Doc. no. 3-1).

21. No representative of the Defendant ever traveled to the State of Alabama. *Id.*

23. Plaintiff's representatives traveled to the Defendant's offices in Oklahoma City to provide support regarding the merchandise received by the Defendant. (Doc. nos. 3-1 & 7-1).

The parties differ as to how many orders should be considered in the Court's analysis of minimum contacts. Plaintiff argues that all contacts surrounding the relationship should be considered, which amounts to around sixteen (16) orders during the entire relationship consisting of approximately 58,000 items of merchandise valued at approximately $350,000.00 dollars. (Doc. no. 7). The Defendant seeks to narrow their contacts to two (2) orders, the Fall 2017 order and the Spring 2018 line, but does not dispute the other orders and/or contacts. (Doc. no. 3). Further, in an effort to show that some of the items were not manufactured in Alabama, Defendant highlights additional large sample orders related to the Fall 2017 and Spring 2018 lines that it alleges were shipped directly from India to the Defendant's offices in Oklahoma. (Doc. no. 3).

## III. DISCUSSION

Defendant contends that this case should be dismissed for lack of personal

jurisdiction because it lacks the minimum requisite contacts with the State of Alabama. Defendant further argues that even if the requisite minimum contacts exist, that litigating this action in Alabama would violate due process. Pursuant to the above guidelines as outlined in *Mosseri*, the Court must first conduct a minimum-contacts analysis, a factually specific analysis which focuses solely upon the defendant's contacts. *Mosseri,* 736 F.3d at 1355. *See also*, *Ex parte Alamo Title Co.*, 128 So. 3d 700, 710 (Ala. 2013).

**A**. **Whether Plaintiff's claims "arise out of or relate to" as least one of the Defendant's contacts with the State of Alabama.**

Plaintiff's complaint alleges seven (7) counts: (1) Breach of Contract; (2) Account Stated; (3) Unjust Enrichment; (4) Breach of Covenant of Good Faith and Fair Dealing; (5) Promissory Estoppel; (6) Fraud; and (7) Negligent Misrepresentation. (Doc. no. 1-1). The complaint seeks damages only for the Spring 2018 merchandise purchase orders. Defendant claims that the Fall 2017 merchandise did not meet its specifications as well, and Plaintiff explains that, in an effort to establish a long-term business relationship, it waived payment on the Fall 2017 merchandise and allowed the Defendant to retain the merchandise.

It is undisputed that Defendant placed the orders concerning the 2018 Spring Merchandise; that the goods ordered were received; and that no payment has been made for the goods that were ordered and received. Defendant contends that it has not paid for the 2018 Spring merchandise because the merchandise was non-

conforming and that it was returned to the Plaintiff's offices in Cullman, Alabama; these particular facts are not critical for our analysis at this point. There is no question, and the Defendant has not argued otherwise, that its contacts with the Plaintiff and this forum regarding the 2018 Spring Purchase Order all "arise out of or relate to" the Plaintiff's claims. Therefore, the first prong of the minimum-contacts test is satisfied.

**B.** **Whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the State of Alabama, thus invoking the benefit of the forum state's laws.**

The principal issue presented in brief and at oral argument is what contacts the Court should and can consider in determining the extent the Defendant's activities. For instance, the Plaintiff argues that the Court can consider all contacts and not just those centered on the 2018 Spring Merchandise Order. Defendant seeks to trim the contacts to no more than two (2) and one (1) related specifically to the 2018 Spring Order. The U.S. Supreme Court in *Burger King* answered this question as follows:

> "[W]e have emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' (citation omitted). *It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.*"

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985) (alteration and emphasis

supplied) (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S., at 316-17).    Thus,

we must consider the entire course of dealing to determine the second prong of the

minimum contacts test.   The Eleventh Circuit followed this reasoning in *Diamond*

*Crystal Brands, Inc.* wherein it addressed the requisite personal jurisdiction

minimum contacts analysis for contractual cases as follows:

> At the outset, we underscore that the minimum contacts analysis is " 'immune to solution by checklist.' " *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir.2007) (quoting *Prod. Promotions, Inc. v. Cousteau*, 495 F.2d 483, 499 (5th Cir.1974)). Thus, it is settled that entering a contract with a citizen of another state, standing alone, does not automatically satisfy the minimum contacts test. *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185.

> Rather, when inspecting a contractual relationship for minimum contacts, we follow a "highly realistic approach" that focuses on the substance of the transaction: prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing. *Id.* at 479, 105 S.Ct. at 2185 (internal quotation omitted). The focus must always be on the nonresident defendant's conduct, that is, whether the defendant deliberately engaged in significant activities within a state or created continuing obligations with residents of the forum. *Id.* at 480, 105 S.Ct. at 2186–87. This focus ensures that a defendant will not be subject to jurisdiction based solely on " 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* at 475, 105 S.Ct. at 2183 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. at 1473, 1478, 79 L.Ed.2d 790 (1984)).

> This case involves a forum seller's effort to sue a nonresident buyer in the seller's home forum for breach of contract. In this context, we have rejected jurisdiction when the buyer's sole contact with the forum is contracting with a resident seller who performs there. See *Borg–Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1063 (11th Cir. 1986) (refusing to exercise jurisdiction where the

primary contact involved an isolated purchase of goods manufactured in the forum under a contract negotiated outside of the forum). This follows from the two well-established propositions that neither merely contracting with a forum resident nor the forum resident's unilateral acts can establish sufficient minimum contacts.

But nonresident purchasers can still be subject to jurisdiction in the seller's forum. Jurisdiction is often found where further contacts or plus factors connect the defendant to the jurisdiction. See, e.g., *Sloss Indus.*, 488 F.3d at 931–33. Courts have considered a defendant's initiating the contractual relationship, visiting the plaintiff's factory to assess or improve quality, sending materials to the plaintiff for inspection or use in shipping, participating in the manufacturing process, establishing a relationship by placing multiple orders, requiring performance in the forum, negotiating the contract via telefaxes or calls with the plaintiff; the list goes on.

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1268–69 (11th Cir. 2010).    Thus, a single contact will not suffice and there are no specific number of contacts or types of contacts or a "checklist" to establish minimum contacts sufficient for personal jurisdiction.  *Id*.  However, it is critical that the non-resident purchaser initiate or solicitate the contacts with the forum party and, if not, this fact alone could be critical.[2]

Ms. Farmer's affidavit, as provided by the Defendant, attempts to minimize the party's contractual relationship by omitting key facts surrounding the Defendant's initiation and solicitation of the orders in this case.  The undisputed email exhibits attached to the Plaintiff's affidavit of Ms. Lyons show that the

---

[2] *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 932 (11th Cir. 2007) (upholding a district court's finding of sufficient minimal contacts for the exercise of personal jurisdiction upon, *inter alia*, solicitations by the [non-resident] purchaser of ten orders over the period of several months).

Defendant not only initiated these orders but was the controlling party regarding the designs and production time. During questioning at oral argument both parties agreed that the communications regarding these designs and specifications were involved. Evidence submitted shows that the designs involved the Defendant's logo along with other designs created by the Defendant for marketing to customers with an affection for the State of Alabama by using the words "Alabama" in the designs. In support, the Plaintiff produced sufficient evidence, again to which the Defendant did not dispute, that the Defendant was currently selling the 2017 merchandise, allegedly non-conforming, in the State of Alabama thru several stores and by internet sales. Defendant argues that the sales in Alabama are negligible but presents no specific evidence to support this argument. In sum, it is undisputed that Defendant solicited and initiated the first and subsequent order(s) for merchandise, a total course of dealing involving some sixteen (16) orders over a ten (10) month period consisting of merchandise valued at approximately $350,00.00 dollars; that the parties participated in numerous negotiations regarding the designs, color and printing of a substantial volume of apparel items by telephone, fax and Face Time; and that the Plaintiff travelled on two (2) occasions to the Defendant's place of business to assist with several complaints and support issues regarding the merchandise. The Court finds that Defendant deliberately engaged in significant

activities, thereby creating continuing obligations[3] with the Plaintiff within the State of Alabama and is not simply a "passive purchaser."[4] Accordingly, the Court further finds that the Defendant "purposefully availed" itself of the privilege of conducting activities within the State of Alabama to the extent that the exercise of personal jurisdiction over it would not violate constitutional due process.

## C. Whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

Having concluded that sufficient minimum contacts exist, the Court must now address the Defendant's argument that litigation in the State of Alabama would offend "traditional notions of fair play and substantial justice." *Burger King*, 471 U.S. at 476. *See* also *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir.1996). This evaluation includes three factors: (1) The burden on defendant; (2) the State of Alabama's interest in adjudicating the dispute; and (3) the Plaintiff's interest in obtaining convenient and effective relief. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 933 (11th Cir. 2007). First, the Defendant neither in brief nor at oral argument has presented a specific burden concerning litigation of this matter in the State of Alabama. The Defendant seems to rely solely upon its argument that it is a limited purchaser without significant contacts. This Court disagrees. Nevertheless,

---

[3] *Burger King*, 471 U.S. at 480.
[4] *Sloss Indus. Corp.*, 488 F.3d at 933 (defined a passive purchaser "simply places an order and sits by until the goods are delivered.") (quoting *Whittaker Corp. v. United Aircraft Corp.*, 482 F.2d 1079, 1084 (1st Cir.1973) a case examined with approval in *Borg-Warner*, 786 F.2d at 1061 & n.3).

the Court finds that the burden upon the Defendant is minimal considering the location of the witnesses and the merchandise which is the subject of the Plaintiff's complaint.[5] Huntsville has an international airport making travel to and from Oklahoma City extremely efficient and reasonable. Of course, the possibility of litigation in the forum that you seek business should always be a factor in any business dealings outside your home state. Second, neither party has argued that it is against the interest of the State of Alabama in adjudicating a dispute involving a contract initiated in the State with an Alabama Corporation; the Court finds that it is in the State's interest to resolve this dispute in the present forum. Third, the Plaintiff argues, without dispute, that it has a compelling interest in obtaining convenient and effective relief by litigating this case in the State of Alabama rather than Oklahoma. Consequently, the Court finds that litigation of this case in this forum would not "offend the traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316.

## IV. CONCLUSION

Based upon the foregoing, Defendant's motion to dismiss for lack of personal jurisdiction (doc. no. 3) is hereby DENIED. Defendant's answer is due on or before January 20, 2020. The stay of all Rule 26, Fed. R. Civ. P., obligations (doc. no. 8)

---

[5] Plaintiff's counsel at oral argument provided that the 2018 Spring Merchandise, which was returned by the Defendant to the plaintiff's offices in Cullman, Alabama, where it is currently being stored, consists of three to four pallets containing 7,000 products.

is hereby lifted and the parties are directed to file a report of parties planning meeting[6] on or before February 19, 2020.

      **DONE** and **ORDERED** this January 13, 2020.

                                      **LILES C. BURKE**
                                      UNITED STATES DISTRICT JUDGE

---

[6] Pursuant to the Court's initial order governing all further proceedings. (Doc. no. 5).